Samuel **PALAIO** and Walter Adams,
Plaintiffs-Appellants,

v.

Hinson **McAULIFFE** et al., Defendants-
Appellees.

No. 71–2625.

United States Court of Appeals,
Fifth Circuit.

Sept. 21, 1972.

As Modified on Denial of Rehearing
Dec. 11, 1972.

Frierson M. Graves, Jr., Memphis,
Tenn., for plaintiffs-appellants; Heis-
kell, Donelson, Adams, Williams & Wall,
Memphis, Tenn., of counsel.

Tony H. Hight, Asst. Dist. Atty., At-
lanta, Ga., Thomas E. Moran, Sandy
Springs, Ga., W. Baer Endictor, Atlanta,
Ga., Thomas R. Moran, Sandy Springs,
Ga., for defendants-appellees; Moran &
Moran, Sandy Springs, Ga., of counsel.

Before BELL, THORNBERRY and
INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants Palaio and Adams filed suit in the court below seeking declaratory and injunctive relief against appellees' efforts in a Georgia state court to have certain motion pictures declared obscene and subject to seizure. The court below held that federal intervention in these state court proceedings was improper and accordingly dismissed the suit. We agree with the district court that federal anticipatory relief would be inappropriate in this case, and thus intimate no view as to appellants' challenges to the state court proceedings.[1]

Each of the appellants operated a motion picture theatre in Atlanta. On October 21, 1970, appellee McAuliffe, as Solicitor General of the Criminal Court of Fulton County, Georgia, instituted proceedings in the Fulton County Superior Court to have two motion pictures that were exhibited at appellants' theatres declared obscene and subject to seizure. In that suit, appellee sought a temporary and permanent injunction against exhibition of the films, and an order of the court that the films be seized and destroyed. The Superior Court judge issued an order setting a hearing for October 23, 1970, and requiring appellants to show cause why the films should not be declared obscene and seized. Both appellants filed answers and motions to dismiss the state court suit, urging as grounds for dismissal the same constitutional arguments that they raise on this appeal.[2] On November 23, 1970, the Superior Court judge rejected these constitutional claims and found probable cause for holding one of the films (exhibited in Palaio's theatre) obscene and subject to seizure. Subsequently, a criminal complaint was brought against both appellants in the Fulton County Criminal Court for exhibiting the motion pictures in violation of Georgia Code § 26–2101.[3] That criminal prosecution was pending on the date this appeal reached us. The ruling of the Fulton County Superior Court was later affirmed by the Georgia Supreme Court on October 7, 1971 [1024 Peachtree Corp. v. Slaton, 228 Ga. 102, 184 S.E.2d 144 (1971)].

Meanwhile, appellants had begun the action that is the basis for the instant appeal. On October 20, 1970, shortly after the state court proceedings had been initiated, appellants filed complaints

---

1. Appellants argue that their exhibition of the motion pictures was a constitutionally protected activity, and that the suit to declare the films obscene and subject to seizure failed to afford the requisite procedural safeguards designed to prevent suppression of nonobscene publications protected by the Constitution.

2. *See* footnote 1, *supra*.

3. The Georgia statute provides, in pertinent part:
    (a) A person commits the offense of distributing obscene materials when he sells, lends, rents, leases, gives, advertises, publishes, exhibits or otherwise disseminates to any person any obscene material of any description, knowing the obscene nature thereof, or who offers to do so, or who possesses such material with the intent so to do: Provided, that the word "knowing" as used

herein shall be deemed to be either actual or constructive knowledge of the obscene contents of the subject-matter; and a person has constructive knowledge of the obscene contents if he has knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material.
    (b) Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing such matters. Undeveloped photographs, molds, printing plates and the like shall be deemed obscene notwithstanding that processing or other acts may be required to make the obscenity patent or to disseminate it.

under 28 U.S.C.A. § 1343 [4] and 42 U.S.C.A. § 1983 [5] against appellee McAuliffe and Lewis Slaton, District Attorney for the Atlanta Judicial Circuit. The complaint reiterated appellants' attack on the state court proceedings,[6] and sought injunctions against pending and future criminal and civil proceedings against them and a declaration that the procedures employed in the state court suit were constitutionally invalid. On March 17, 1971—after the state judge had found probable cause for declaring one of the motion pictures obscene and after the state criminal prosecution of appellants had begun—the federal district judge concluded that the suit to declare the motion pictures subject to seizure was a good-faith effort by Georgia officials to enforce Georgia criminal laws, and accordingly held that dismissal was dictated by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ *Younger, supra,* and its companion case, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), established that federal intervention—by way of injunctive or declaratory relief —in a state's enforcement of its criminal laws is improper unless the plaintiff can prove that the enforcement of those laws against him creates such a threat to his federally protected rights as cannot be eliminated by the defense of a single state prosecution. In a widely-quoted passage, Justice Stewart explained that the Court in *Younger* and its companion cases was not dealing with "the considerations that should govern a federal court when it is asked to intervene in state civil proceedings, where, for various reasons, the balance might be struck differently." 401 U.S. at 55, 91 S.Ct. at 757. This statement is the basis for appellants' contention that the court below erroneously viewed *Younger* as precluding federal intervention in the suit to declare the motion pictures subject to seizure, which appellants characterize as a civil proceeding.[7]

Appellants are correct in their assertion that the proceeding to declare the films obscene was "civil" in nature, rather than "criminal." That suit did not subject appellants to any risk of fine or imprisonment; as far as they were concerned, the worst possible outcome of the suit could be seizure of the films and the consequent economic loss. Moreover, there is nothing in the record to suggest that the suit to declare the films obscene was not wholly independent of the criminal prosecution subsequently brought against appellants. In the sense that no "penalty" could arise from the state court proceeding as such, then, it was surely "civil" in nature.

■■ We believe, however, that application of the principles of *Younger* should not depend upon such labels as

4. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person :

   * * *

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States ;

   (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

5. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6. *See* footnote 1 *supra.*

7. A second procedural question initially presented by this appeal—whether 42 U.S.C.A. § 1983, under which appellants brought their complaint, is an express exception to the Anti-Injunction Act, 28 U.S.C.A. § 2283—has been eliminated by the Supreme Court's affirmative answer to that question in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed. 2d 705 (1972).

"civil" or "criminal," but rather should be governed by analysis of the competing interests that each case presents. Thus, in Hobbs v. Thompson, 5th Cir. 1971, 448 F.2d 456, this Court held that *Younger* did not bar a suit seeking relief from enforcement of a city ordinance prohibiting political activity by firemen; the Court's conclusion rested not on the view that enforcement of the ordinance (dismissal of firemen who violated it) was "civil" in nature, but rather on the ground that federal intervention in that case could have no effect on an ongoing state proceeding, either civil or criminal. 448 F.2d at 469. On the other hand, when federal anticipatory relief will significantly affect a state's enforcement—by whatever means—of its criminal laws, then such relief is barred by the strong policy of noninterference, unless the plaintiff can meet the heavy burden of proof that *Younger* imposes.

We believe that the court below was correct in its view that the suit to declare the films subject to seizure was—albeit a "civil" proceeding—a part of Georgia's program of enforcing its criminal laws. The Georgia Supreme Court has characterized such suits essentially as civil techniques for enforcing Georgia's criminal prohibition against the distribution of obscene material:

> [A]n action may be maintained at the instance of the prosecuting attorney to enjoin an existing or threatened public nuisance, even though the nuisance constitutes a crime punishable under the criminal laws [citations omitted].

> The exhibition of an obscene motion picture is a crime involving the welfare of the public at large . . .

The welfare of the whole community is served by restraining the showing of such an obscene film.

Evans Theatre Corp. v. Slaton, 227 Ga. 377, 180 S.E.2d 712, 716 (1971). Moreover, a three-judge federal court has suggested that such suits might afford a method of obtaining the constitutionally required adversary hearing prior to the arrest and prosecution of one for the sale of allegedy obscene materials. Gable v. Jenkins, N.D.Ga.1969, 309 F.Supp. 998, aff'd per curiam, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970). Finally, the Supreme Court has recognized that such suits as these "supplement the existing conventional criminal provision[s] dealing with pornography." Kingsley Books, Inc. v. Brown, 354 U.S. 436, 437, 77 S.Ct. 1325, 1326, 1 L.Ed.2d 1469 (1957). Thus, we conclude that, for the purpose of determining the propriety of granting federal anticipatory relief, the suit to declare the films subject to seizure was functionally equivalent to a direct criminal prosecution for exhibiting the films. In both proceedings, the aim of the moving party was the enforcement of state criminal laws. Federal intervention in the state court proceeding was therefore improper under *Younger*, because appellants failed to establish the requisite "special circumstances" justifying such relief.

We thus pose a limited answer to the question expressly reserved in *Younger*, *supra*, by holding that, where plaintiff is unable to prove the existence of "special circumstances," the principles of *Younger* bar federal intervention in a state civil proceeding that is an integral part of a state's enforcement of its criminal laws.

Affirmed.