**Phyllis LYNCH et al., Appellees,**

v.

**Frank W. SNEPP et al., Appellants.**

**No. 72-2377.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1972.

Decided Jan. 26, 1973.

Charles A. Lloyd, Asst. Atty. Gen. of North Carolina (Robert Morgan, Atty. Gen. of North Carolina, on brief), for appellants Snepp and Moore.

George S. Daly, Jr., Charlotte, N. C., for appellees.

Before WINTER, CRAVEN and FIELD, Circuit Judges.

CRAVEN, Circuit Judge.

This is an appeal by judicial and executive officers of the State of North Carolina from the granting of a preliminary injunction against them by the United States District Judge, 350 F. Supp. 1134. The federal preliminary injunction has the effect of restraining in part the enforcement of a state injunction that undertook to control access to the public schools of Mecklenburg County by the public. We are thus confronted with an unfortunate juxtaposition of federal and state judicial power. The state's interest in the matter and the jurisdiction of its courts is predicated upon state police power and the maintenance of peace and the preventing of

disruption in the operation of the public schools. The interest of the federal court, equally legitimate, is the vindication and·protection of the right of freedom of speech and assembly pursuant to the first amendment. Both coordinate courts undoubtedly have subject matter jurisdiction.

█ The federal court issued its preliminary injunction under the authority of 42 U.S.C. § 1983, which has now been held, Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), to be an express exception by the Congress to the bar of the anti-injunction statute, 28 U.S.C. § 2283.[1]

That the federal court had jurisdiction under 42 U.S.C. § 1983 and was not prevented from exercising it by 28 U.S. C. § 2283 does not end the matter. In *Mitchum, supra,* the Supreme Court, after holding that the anti-injunction statute was not a bar to the maintenance of a § 1983 case, then noted that "we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." 407 U.S. at 243, 92 S.Ct. at 2162. *Mitchum* referred to Younger v. Harris for an exposition and statement of these principles. *Younger* and its companion cases[2] were decided in the context of enjoining state criminal proceedings. In a concurring opinion in *Mitchum* the Chief Justice noted that the Court has "not yet reached or decided exactly how great a restraint is imposed by these principles on a federal court asked to enjoin state *civil* proceedings." 407 U.S. at 244, 92 S.Ct. at 2162.

█ It is that question we must decide here, *i. e.,* to what extent the general notions of comity, equity and federalism, as exposited in *Younger* and its companion cases, apply in this civil context. The application of these principles must always be considered by federal judges in the course of determining whether or not to exercise jurisdiction to restrain state courts in a suit brought under § 1983. But to say that such principles are germane and applicable does not dictate the result in a given case. For reasons later exposited we think the application of such notions to the facts of this case indicate that the only appropriate course for the district court was to refrain from exercising its equitable jurisdiction. Therefore, we reverse the grant of preliminary injunction.

I.

The federal plaintiffs filed this suit against the superior court judge, the solicitor, and the sheriff of Mecklenburg County, North Carolina, challenging, under 42 U.S.C. § 1983, the constitutionality of two orders issued by the North Carolina Superior Court.

On October 27, 1972, the solicitor had presented a sworn petition to the superior court stating that a state of emergency was imminent within the Charlotte-Mecklenburg school system as a result of certain episodes of violence and disruption. In response, the court issued a temporary restraining order, restraining all but students, employees, those with permission from school authorities, law enforcement officials, and parents transporting children to or from school from

---

1. It should be noted that the state court injunction did not purport to interfere with the jurisdiction of the federal court in implementing a unitary school system in Charlotte and Mecklenburg County, *see* Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). Thus the district court had no occasion to act, as it surely could, in aid of its jurisdiction, which is another exception contained in the anti-injunction statute.

2. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77,. 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

entering school property. The order gave notice that those wishing to contest the continuance of the injunction could do so by appearing at a show cause hearing to be held three days later.

At least three of the four federal plaintiffs appeared at the show cause hearing and were found to be within the class designated defendants. On October 31, 1972, the superior court issued a preliminary injunction[3] which substantially continued the visitation prohibitions of the restraining order.

Thereafter, the plaintiffs filed their action in the federal district court, challenging the orders of the superior court. The plaintiffs sought a preliminary injunction against the enforcement of the superior court orders. On November 15, 1972, the district court granted a preliminary injunction to the plaintiffs, and the defendants appealed. This court issued an order staying in part the preliminary injunction pending appeal.

## II.

■ The long-standing public policy against federal court interference with state court proceedings antedates the Constitution. Goebel, Antecedents and Beginnings to 1801, History of the Supreme Court of the United States, 226, 299 (Freund ed. 1971). This policy is founded in part on "the basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Younger v. Harris, 401 U.S. 37, 43–44, 91 S.Ct. 746, 750 (1971). This equity doctrine is reinforced by the concepts of federalism.

We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them.

Wilson v. Schnettler, 365 U.S. 381, 385, 81 S.Ct. 632, 635, 5 L.Ed.2d 620 (1961).

One such rule early adopted by the Court is that:

Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases.

Taylor v. Taintor, 16 Wall. 366, 370, 21 L.Ed. 287 (1873). See also Ex parte Young, 209 U.S. 123, 161–162, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus ordinarily the jurisdiction of a state court first obtained should not be interfered with by federal courts. Ex parte Chetwood, 165 U.S. 443, 17 S.Ct. 385, 41 L.Ed. 782 (1897); University Day Care Center, Inc. v. Temple University, 442

---

3. The preliminary injunction of October 31, 1972 provided in relevant part:
    IT IS THEREFORE, ORDERED, ADJUDGED and DECREED that the persons who have become parties hereto and all persons acting in concert with them, and all persons to whom knowledge of this order may come, are hereby restrained and enjoined as follows:

    · · · · · ·
    2. From going in the buildings or on the grounds of any high school or junior high school which is a unit of the Charlotte-Mecklenburg Board of Education, with the following exceptions:
    (a) Students at said schools attending classes or other regularly scheduled activities of the schools.
    (b) Teachers, administrative employees, staff members and other employees of the schools, while in attendance to their regular duties.
    (c) Persons having permission from the administrative officers of the Charlotte-Mecklenburg Board of Education or from school principals.
    (d) Members of the news media.
    (e) Law enforcement officers and public officials in the discharge of their duties.
    (f) Parents or guardians of students attending the school or other persons transporting students to or from the school when such entry is reasonably necessary for the purpose of such transportation.

F.2d 1116, 1118 (3d Cir. 1971); Ganger v. Peyton, 379 F.2d 710 (4th Cir. 1967).

Even though federal courts have the admitted power under the Civil Rights Acts to enjoin state proceedings, such power is not to be used to upset federalism and centralize power. Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951). Sensitivity to the interests of two sovereignties requires that a federal equity court should enjoin state officers only when absolutely necessary to the protection of constitutional rights, Fenner v. Boykin, 271 U.S. 240, 46 S.Ct 492, 70 L.Ed. 927 (1926), and always with a proper regard for the rightful independence of state governments. Burford v. Sun Oil Co., 319 U.S. 315, 317–318, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841 (1935).

In a case seeking to enjoin enforcement of a state civil statute, Mr. Justice Holmes stated:

> [N]o injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury.

Massachusetts State Grange v. Benton, 272 U.S. 525, 527, 47 S.Ct 189, 190, 71 L.Ed. 387 (1926).

Likewise, Mr. Justice Cardozo cautioned that:

> A prudent self restraint is called for . . . if state and national functions are to be maintained in stable equilibrium. Reluctance there has been to use the process of federal courts in restraint of state officials though the rights asserted by the complainants are strictly federal in origin.

Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933).

Maintaining a stable equilibrium between our dual sovereignties is difficult at best. Erdmann v. Stevens, 458 F.2d 1205, 1212 (2d Cir. 1972). (Lumbard, J., concurring). The interest in protection of constitutional rights pulls in one direction and the interest in preserving the rightful independence of state judiciaries pulls in the opposite direction. Comment, Federal Court Stays of State Court Proceedings: A Re-examination of Original Congressional Intent, 38 U. Chi.L.Rev. 612–13 (1971).

Federalism means

> a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

Younger, at 44; 91 S.Ct. at 750. Because of this required sensitivity it has been necessary for the Court "to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." Younger, at 45; 91 S.Ct. 751.

These general notions of comity, equity, and federalism, applied since the early days of our Union of States and most recently restated in Younger and its companion cases,[4] occupy a highly important place in our history and our future. Their application should never be made to turn on such labels as "civil" or "criminal" but rather upon an analysis of the competing interests in each case. Palaio v. McAuliffe, 466 F.2d 1230, 1232–1233 (5th Cir. 1972); Cousins v. Wigoda, 463 F.2d 603 (7th Cir.), application for stay denied, 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15 (1972) (Rhenquist, Circuit Justice).

---

4. "The decisions there were premised on considerations of equity practice and comity in our federal system that have little force in the absence of a pending state proceeding." Lake Carriers' Assoc. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257, 268 (1972).

**774**

### III.

The starting point for an analysis of the competing interests involved has been stated by Mr. Justice Brennan.

> Taken together, the principles of *Ex parte Young* and *Dombrowski* establish that whether a particular case is appropriate for federal intervention depends both on whether a state proceeding is pending and on the ground asserted for intervention.

Perez v. Ledesma, 401 U.S. 82, 120, 91 S.Ct. 674, 694, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part).

■ Thus "pendency" of state proceedings is one of the most important criteria in determining whether federal court intervention in state action is appropriate. One of the factors deserving of consideration is expense in terms of both time and money in the prosecution simultaneously of proceedings in coordinate courts. This sort of expense has been urged as a reason for abandoning *Pullman*-type abstention—where a federal court abstains to await state court determination of a state law issue—even though no state court proceeding is pending. Baggett v. Bullitt, 377 U.S. 360, 378, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Wright, Law of Federal Courts, 198 (2d ed. 1970).

Conversely, the same expense considerations operate against federal intervention where a state proceeding is already underway.

> The pending state proceeding ordinarily provides an existent, concrete opportunity to secure vindication of constitutonal claims in the state courts, with ultimate review by this Court. In this situation collateral resort to a federal court will not speed up the resolution of the controversy since that will not come to an end in any event until the state litigation is concluded. Moreover, federal intervention may disrupt the state proceeding through the issuance of necessary stays or the burdensome necessity for the parties to proceed in two courts simultaneously. Federal adjudication of the matters at issue in the state proceeding may otherwise be an unwarranted and unseemly duplication of the State's own adjudicative process.

Perez v. Ledesma, 401 U.S. 82, 121, 91 S.Ct. 674, 695, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part).

The duplication of costs of such federal adjudication superimposed on state proceedings has been said to imply that state courts are either incapable or unwilling to vindicate federal constitutional rights. Wulp v. Corcoran, 454 F.2d 826, 831 (1st Cir. 1972). But it should never be forgotten that the Constitution literally calls state judges by name (there were no federal judges) and puts upon them the obligation to apply the supreme Law of the Land. U.S.Const. art. VI. Because of the costs involved, in terms of both time and money, the divisive effect of unnecessary friction between coordinate courts, and the clear obligation of state courts to decide questions arising under the Constitution, U.S.Const. art. VI; Erdmann v. Stevens, 458 F.2d 1205, 1211 (2d Cir. 1972), there is a presumption against federal interference. *See* The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 303 (1971).

■ This presumption against federal interference reflects two of the prerequisites to obtaining equitable relief —that the moving party will suffer irreparable injury and that there is not an adequate remedy at law. *Younger*, at 43–44 of 401 U.S., 91 S.Ct. 746.

■■ To establish these criteria in a case where a state proceeding has already been commenced, the federal plaintiff must prove that the threat to his rights is both great and immediate,[5]

---

5. The requirement that there be irreparable injury which is both great and immediate was stated in a criminal context. *Younger*, at 46 of 401 U.S., 91 S.Ct. 746.

and is such that it cannot be eliminated by his defense of the single civil action. *Younger*, at 46; 91 S.Ct. 746. Cousins v. Wigoda, 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d at 20. A district court thus cannot enjoin a state civil proceeding unless he finds that the state proceeding cannot eliminate the threat to the plaintiff's rights.[6]

In the case of Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969), the Fifth Circuit attempted to draw the line of irreparable injury somewhat differently where "public" as opposed to "private" rights were involved. Under this rationale a federal court would not yield to comity, but would be empowered to enjoin all state court proceedings to the extent they violated first amendment rights. 414 F.2d at 291.

■ Despite the "firstness" of the first amendment, we do not believe that every case asserting a first amendment violation is a proper one for a federal court to interfere with a state proceeding. Indeed, this is the teaching of *Younger* itself. Even the case of Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965) does not stand "for the proposition that a federal court can properly enjoin enforcement of a statute solely on the basis of a showing that the statute 'on its face' abridges First Amendment rights." *Younger*, at 53; 91 S.Ct. at 755. Thus even in the area of first amendment rights, circumstances in addition to a chilling effect, such as those present in *Dombrowski*,[7] must be present before a federal equity court should intervene in a state proceeding already commenced.

### IV.

Thus we must look to the facts of the present case to determine if there are special circumstances which will justify the intervention by a federal court of equity in the state court proceeding. That is, we must determine if the plaintiffs have shown injury which could not be dissipated should these plaintiffs defend in the state civil proceeding; irreparable injury which is both great and immediate; and, a case reasonably free from doubt.

■ It is true that the order of the superior court is possibly overbroad. It imposes a prior restraint on any and all visits by these plaintiffs and other members of the public to all ten high schools and about 20 junior high schools in a county with over a twelve-mile radius. But there is no evidence in the record of disruption or threatened disruption except at one high school. There is, however, no allegation or showing that what overbreadth there exists in the superior court orders cannot be cured by an immediate appeal to the state appellate courts, the use of prerogative writs by those courts, or even by defending at the final trial on the merits before the superior court. There has been no allegation or showing on the record here

It has been suggested that perhaps the test may be less stringent in a civil case. *See* Cousins v. Wigoda, 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15, 20 (1972) (Rhenquist, Circuit Justice). While the offense to a state interest may be less in a civil proceeding than in a criminal proceeding, *Younger*, at 55 n. 2 of 401 U.S., 91 S.Ct. 746 (Stewart, J., concurring), also the burden on the individual if left to his state court remedies is less severe in the civil context. In requiring a federal plaintiff to defend a state civil action there is no exposure to criminal penalties which could cumulate during the pendency of the action. *Cf.* Wulp v. Corcoran, 454 F.2d 826, 831 (1st Cir. 1972). Moreover, when coordinate courts are on collision course the disruptive effect on federalism is not likely to be dissipated by assurance that only civil jurisdiction is involved.

6. Byrne v. Karalexis, 401 U.S. 216, 220, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

Requiring a plaintiff to pursue his remedies in a pending proceeding is based solely on principles of equity. There is no requirement that a federal plaintiff exhaust state remedies before proceeding under 42 U.S.C. § 1983. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961).

7. *See* *Younger*, at 49–51; 91 S.Ct. 764; Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).

that the judicial machinery of the state is being utilized in bad faith or for harassment. Furthermore, requiring the plaintiffs to first seek vindication of their rights in the pending state court proceeding will not expose them to the risk of possible loss of liberty. The record is thus void of any indication that the plaintiff's remedy at law in the state court proceeding is inadequate or that there is present irreparable injury sufficient to justify federal intervention.

While not expressing approval of such broad ex parte injunctions as those issued by the superior court, we note that the question of their validity is not free from doubt. *See* Gerbert v. Hoffman, 328 F.Supp. 574 (E.D.Pa.1971). For example, one federal district court in a similar context has gone so far as to prohibit *students* from airing their grievances near school buildings. Montgomery County Bd. of Educ. v. Shelton, 327 F.Supp. 811, 813 (N.D.Miss.1971). Such an injunction goes further than the one present here since the extent of the first amendment rights of students has been expostulated by the Supreme Court. *See* Tinker v. Des Moines Community School Dist., 393 U.S. 503, 89 S. Ct. 733, 21 L.Ed.2d 731 (1969). A question not yet dealt with, however, and the question presented here is how the right, if any, of a *non-student* to use the schools as a forum for expression and the conflicting right of school authorities to preserve order may be balanced and resolved. Having found equitable relief to be improper in this case, we need not now decide that difficult question.

Since the plaintiffs below failed to show great and immediate irreparable injury, that their rights would not be protected in the state proceedings, and a case reasonably free from doubt, the district court exceeded its equitable discretion in granting injunctive relief. Accordingly, the district court's grant of a preliminary injunction will be

Reversed.