Alvis G. SPEIGHT, t/a Harem Book Store, and James L. Chandler, Plaintiffs,

v.

Lewis R. SLATON, In his Capacity as District Attorney, Atlanta Judicial Circuit, and Hinson McAuliffe, In his Capacity as Solicitor, Criminal Court of Fulton County, Defendants.

Civ. A. No. 17075.

United States District Court, N. D. Georgia, Atlanta Division.

Feb. 22, 1973.

D. Freeman Hutton, Gilbert H. Deitch, Atlanta, Ga., Robert E. Smith, Baltimore, Md., for plaintiffs.

Joel Feldman, Asst. Dist. Atty., Atlanta, Ga., for defendants.

Before MORGAN, Circuit Judge, and MOYE and O'KELLEY, District Judges.

MOYE, District Judge:

### OPINION AND ORDER

Plaintiffs operate an establishment in Atlanta, Georgia, known as the Harem Bookstore. On August 23, 1972, pursuant to recently enacted Georgia statutes relating to obscenity,[1] the defendants herein brought a civil suit in the Georgia state courts to abate the Harem Bookstore as a public nuisance.[2] On the same day the state court ordered plaintiffs herein to show cause why their bookstore should not be abated as a public nuisance, they brought this suit in federal court alleging that the materials sold in their bookstore were protected by the First Amendment and the attempt to abate their bookstore as a public nuisance was unconstitutional.[3] Plaintiffs challenged the constitutionality of the Georgia statutes as written and as applied and requested this Court to intervene in the state court proceedings and enjoin further use of the allegedly unconstitutional Georgia statutes. Since that time the state court suit has been stayed pending the outcome of this request for federal intervention.

The propriety of federal intervention in state court proceedings has been the subject of numerous recent Supreme Court and Fifth Circuit opinions. New guidelines for federal intervention in state court *criminal* proceedings were established by the Supreme Court in

---

1. Ga.Code Ann. § 26–2101 et seq. (1972).

2. Civil proceedings to abate the bookstore as a public nuisance are authorized by the combined useage of § 26–2103 and § 72–202 of the Georgia Code. Section 26–2103 declares: "The use of any premises in violation of any of the provisions of this Chapter (relating to obscenity) shall constitute a public nuisance." Section 72–202 provides that the petition to abate a public nuisance "must proceed for the public on information filed by the solicitor general of the circuit." Thus, Georgia provides a method for civil enforcement of its criminal statutes relating to obscenity.

3. Plaintiffs have properly asserted federal jurisdiction under 28 U.S.C.A. § 1343(3) based on a cause of action under 42 U.S.C.A. § 1983 and requested a three-judge court be convened pursuant to 28 U.S.C.A. §§ 2281 and 2284.

Younger v. Harris[4] and its companion cases.[5] But *Younger* specifically declined to extend the applicability of those standards to intervention in state court *civil* proceedings.[6]

We need not pause here to analyze how the *Younger* standards should be applied in state court civil cases because the instant case does not present that situation. The situation before this Court does not involve a request for intervention in simply a Georgia state court civil case, but instead, a state court civil proceeding used to enforce Georgia's criminal laws. The propriety of federal intervention in these circumstances has been squarely decided by the Fifth Circuit Court of Appeals in Palaio v. McAuliffe.[7]

*Palaio* involved a fact situation strikingly similar to the instant case. In *Palaio*, plaintiffs requested the federal district court to enjoin Georgia civil and criminal suits which had been brought against them under Georgia obscenity laws. The federal district court refused to intervene and the court of appeals affirmed. The only difference between *Palaio* and the instant case is that in *Palaio* the state court had already heard the entire case and rendered a decision which was affirmed by the Georgia Supreme Court when the federal district court refused to intervene. Here, the state court civil suit has not yet begun and has been stayed pending the outcome of this case. As explained below, this distinction weighs heavily in favor of nonintervention.

In affirming the district court's refusal to intervene, the court of appeals in *Palaio* held:

"We believe, however, that application of the principles of *Younger* should not depend upon such labels as 'civil' or 'criminal,' but rather should be governed by analysis of the competing interests that each case presents [and] when federal anticipatory relief will significantly affect a state's enforcement—by whatever means—of its criminal laws, then such relief is barred by the strong policy of noninterference, unless the plaintiff can meet the heavy burden of proof that *Younger* imposes."

\* \* \* \* \* \*

"We thus pose a limited answer to the question expressly reserved in *Younger, supra,* by holding that, *where plaintiff is unable to prove the existence of 'special circumstances,' the principles of Younger bar federal intervention in a state civil proceeding that is an integral part of a state's enforcement of its criminal laws.*"[8]

The instant case which we are requested to enjoin is, like *Palaio*, a state civil proceeding that is an integral part of the State of Georgia's enforcement of its criminal laws. In fact, the instant case presents an even stronger case for non-intervention than *Palaio* because the state laws which were claimed to be unconstitutional in *Palaio* had already been tested in the Georgia state courts prior to the request for intervention, while here the state law is a new statute and

---

4. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970). The Court held "that the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it" and federal courts should not intervene absent a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54, 91 S.Ct. at 755.

5. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1970); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1970); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d

701 (1970); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1970); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1970).

6. Justice Stewart, concurring, stated that the Court was not dealing with "the considerations that should govern a federal court when it is asked to intervene in state civil proceedings, where, for various reasons, the balance might be struck differently." (401 U.S. at 55, 91 S.Ct. at 957).

7. 466 F.2d 1230 (5th Cir. 1972).

8. *Id.* at 1232–1233.

has not been ruled on by the Georgia state courts.

In support of *Palaio,* which was virtually a "gray horse" case, we could refer to Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), in which Chief Justice Burger, speaking for the dissent, consisting of Justices Burger, White and Blackmun [Justices Powell and Rehnquist not participating], suggested:

"We have not yet reached or decided exactly how great a restraint is imposed by these principles on a federal court asked to enjoin state *civil* proceedings. Therefore on remand in this case, it seems to me the District Court, before reaching a decision on the merits of petitioner's claim, should properly consider whether general notions of equity or principles of federalism, similar to those invoked in *Younger,* prevent the issuance of an injunction against the state 'nuisance abatement' proceedings in the circumstances of this case." *Id.* at 244, 92 S.Ct. at 2163.

Furthermore, plaintiff consistently responded at the three-judge hearing that he could raise the same issues of constitutionality in the Georgia state courts. Consequently, this Court holds that the Georgia state court suit has not been brought in bad faith or for purposes of harassment and that plaintiff has failed to present any "special circumstances which would justify federal intervention.

Accordingly, the complaint is dismissed.[9]

O'KELLEY, District Judge (concurring):

I agree completely with the opinion of Judge Moye in this case.

It would appear that the dissent has attempted to reach the merits of the case before deciding the threshold question, that is if it should even have the case in the first place. The dissenting opinion would imply that our brothers on the state bench are neither willing nor able to apply the First Amendment of the United States Constitution. I do not agree that that is so. If a state trial judge errs, the Supreme Court of Georgia is available to correct his error. If they both err, that is not the end of the avenue when a federal constitutional right is at stake. The Supreme Court of the United States may accept certiorari and review the case even though it has found its course there through the state court system. This is federalism.

The Seventh Circuit has applied the principle of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) to civil actions. Cousins v. Wigoda, 463 F.2d 603, (7 Cir. 1972). More recently, the Fourth Circuit, speaking through Judge Craven, extended that principle to the civil field saying:

"The long-standing public policy against federal court interference with state court proceedings [generally means that] the jurisdiction of a state court first obtained should not be interfered with by federal courts.

"[The] 'pendency' of state proceedings is one of the most important criteria in determining whether federal court intervention in state action is appropriate. . . . Because of the costs involved, in terms of both time and money, the divisive effect of unnecessary friction between coordinate courts, and the clear obligation of state courts to decide questions arising under the [United States] Constitution, . . . there is a presumption against federal interference." Lynch v. Snepp, 472 F.2d 769 (4 Cir. 1973).

The *Lynch* case like this case dealt with a First Amendment question. The court implied that the statute at issue was possibly overbroad and imposed a prior restraint on the parties. That court felt, as does this court, that in or-

---

9. In view of the above holding, it is unnecessary for the Court to rule on defendant's motion requesting the Court to abstain from hearing this case until a decision has been reached in the Georgia state courts.

der for the federal court to intervene, there must be no adequate remedy or appellate process in the state courts.

In the case *sub judice*, there is a single controversy pending in a court of the State of Georgia which may be litigated and appealed to a final determination. There is no allegation of harassment or inadequate remedy in the state court machinery.

If the statute under attack is so clearly unconstitutional as contended by the dissent, surely the Georgia courts will so hold. I am of the opinion that they should first have that opportunity since that statute has never been before them for consideration.

For the foregoing reasons, this court should abstain from interference in the pending litigation and I concur with the opinion and order of Judge Moye.

LEWIS R. MORGAN, Circuit Judge (dissenting):

I must respectfully dissent from the court's decision not to intervene in the state court proceedings.

First, I feel it is necessary to set out in detail exactly what the state is seeking in this proceeding. Over a period of time agents of the state, apparently posing as customers, bought a number of "adult" books from the Harem Bookstore in southwest Atlanta. These items constituted the core of the evidence against the bookstore and its owners. The state first sought to prosecute the owners of the Harem Bookstore in a criminal proceeding under the state's obscenity laws.[1] The trial before a jury resulted in a mistrial with the jury unable to decide whether the materials were obscene. Having failed to this degree in direct criminal prosecution, the state moved to what the majority characterizes as its "civil enforcement of its criminal laws."

The suit this court is asked to enjoin was brought by the Fulton County District Attorney in the Superior Court for Fulton County.[2] The full scope of what the state sought and felt it was entitled to under the challenged statute is best illustrated by the District Attorney's prayer in the state court nuisance action:

(a) . . . injunctions, both temporary and permanent, against the *conduct and operation* of the Harem Bookstore . . . *by any person*; and

(b) . . . an order declaring *all merchandise* on said premises, *as well as all records, supplies, equipment and fixtures* used in connection with the advertising, sale and exhibition for sale of said merchandise, to be contraband and to be forfeited and destroyed. (Emphasis supplied).

It is patently obvious from a reading of this complaint that the government feels it is authorized by this statute to prohibit the sale of all literary material whatsoever at the site of this bookstore, that it is entitled to seize and destroy all literary materials now in that bookstore, whether they have ever been declared obscene or not,[3] and, finally, that they can seize and destroy all fixtures used within that bookstore, no matter what type of literary matter they are used to display or advertise. A fair reading of this statute and its intent shows that this is indeed what the statute intends to authorize.

I find any statute authorizing such a remedy constitutionally abominable. It encourages and allows prior restraint of

---

1. 26 Ga.Code §§ 2101–2104. These statutes were declared constitutional for criminal proceedings in Gable v. Jenkins, 309 F.Supp. 998 (N.D.Ga.1969). These statutes are incorporated by reference in the "nuisance" statute here under attack.

2. The statutes involved are 26–2103, herein challenged, and 72–202, the basic nuisance abatement statute.

3. In the verification of its complaint in state court, the state admits that not all the materials which it seeks to seize are "legally obscene". It takes the position, however, that it has the right to seize these materials also.

the first rank.[4] It is a direct impingement by the state on the precious rights of freedom of speech and freedom of press, guaranteed against state interference by the First and Fourteenth Amendments.

Acting under this statute, agents of the state could, by finding a single volume which they could successfully have declared legally obscene, seize and destroy every other book—including the Bible and the United States Constitution—which was found on the premises of the bookstore from which the legally obscene matter was obtained. Furthermore, they could enjoin permanently the operation of a bookstore at that location, no matter what type of presumptively protected First Amendment materials were to be disseminated therefrom. I can see no way that the action instituted by the District Attorney in this case and authorized by the state statute can be constitutional.

I also have a great deal of difficulty with the "civil as enforcement of criminal" rationale as applied in this case. First, I note that a criminal proceeding involving some[5] of these materials was unsuccessful. In that case the issue of whether or not the materials were obscene was to be decided by a jury and no conclusion was reached. In the instant case the issue of obscenity will be decided in an *in rem* proceeding brought in equity to abate a nuisance. Thus, certain protections are lost by the use of civil proceedings.

The most troublesome element for me, however, is the difference in effect between the criminal and the civil actions. The criminal proceeding with its attendant protections results in punishment of individuals. A civil proceeding designed only to declare obscene and seize a certain publication only affects those publications which are adjudicated obscene in that proceeding. In those two types of cases I can agree that federal courts should eschew intervention, absent special circumstances.[6] However, I must reemphasize that the state proceeding under the statute challenged herein far exceeds in its impact on constitutionally protected rights either of the two preceding state court actions. It allows for the seizure and destruction of presumptively permitted and undeniably permitted First Amendment materials merely because they are found where an "obscene" book is found. It allows for permanent injunctive restraint *in futuro* against the dissemination by certain persons at a certain location of both presumptively protected and *undeniably* protected First Amendment materials. This difference, in effect, is crucial and it is this difference which, in my mind, also tips any balance to the position that intervention by a federal court is not only allowable, it is compelled.

It would seem to me that an adverse decision against the bookstore in state court could seriously damage these First Amendment rights despite any protections offered on appeal.[7]

---

4. I find the prior restraint aspects in the issuance of an injunction prohibiting future operation of a bookstore. I do not believe the state can prohibit the dissemination of literary materials *in futuro* when the nature of such materials cannot be determined. Cf. Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

5. There was a dispute as to whether all the materials purchased by the state were involved in the prosecution which ended in a hung jury, but it is clear several of them were.

6. There is still one troubling problem with the "civil as criminal" rationale. In a criminal case, a defendant will always be guaranteed that a federal court will be available for full consideration of his constitutional claim, for even if certiorari is denied, he may still present his claim through *habeas corpus*. However, this is not an available remedy in a civil case so that failure to intervene will prevent consideration of the constitutional claims by a federal court unless certiorari is granted.

7. First, an adverse decision by the trial court could lead to an immediate seizure and destruction of materials found in the bookstore, whether or not protected, unless some state court granted a stay pend-

The majority relies heavily on Palaio v. McAuliffe, 5 Cir. 1972, 466 F.2d 1230, for its decision that this court should abstain in the present case. First, I basically agree that federal courts should not intrude into state court proceedings where the only questions are whether or not the material involved is "obscene" or whether the definition of "obscenity" is constitutionally infirm. These are, of course, the only issues giving rise to the possibility of intervention by a federal court when the state court action is under a criminal statute or under a statute to declare the matter obscene and to allow seizure, as was the case in *Palaio*. I reiterate that these are not the questions in this case. We are not being asked to adjudicate the issue of obscenity or non-obscenity of the materials in question. Nor is the issue one of whether the Georgia obscenity definition is improper.[8] In fact, the full panel at oral argument in this case rejected an attempt by the District Attorney to put these materials into evidence because it is irrelevant to the issues in this case whether or not these thirteen items were legally obscene.

While the language in *Palaio* is broad at some points, I am convinced that the court in *Palaio* did not intend to reach the situation presented in this case. It is my opinion that the statute in question completely transcends mere civil enforcement of criminal statutes when it includes the seizure and destruction of *protected* First Amendment materials which cannot be seized under any existing state law nor can persons offering such materials for sale be prosecuted for any criminal act; furthermore, there is no criminal law against operation of a bookstore nor can persons be criminally prosecuted for seeking to operate a bookstore in the future. Therefore, the state is not merely enforcing otherwise valid criminal laws through civil proceedings, it has in effect exceeded the bounds of criminal law by achieving a result under civil laws which it unquestionably could not have achieved under criminal statutes.[9]

Furthermore, even if I felt that the "civil as basically an enforcement of criminal law" rationale of *Palaio* were applicable to this case I would still not feel that abstention was required. In a passage from *Palaio* quoted by the majority opinion in this case, the Fifth Circuit acknowledged that special circumstances could well justify intervention. This is, of course, a repetition of the basic test for intervention in criminal cases which was set out by the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The special circumstances found to exist in that case were harassment by the state prosecutorial authorities and repeated threats of prosecution made in bad faith. In *Younger*, however, the Supreme Court took pains to point out that the special circumstances in *Younger* were not the only special circumstances which could ever be found and recognized that other compelling reasons for intervention could exist. The Court directly pointed out one ex-

ing appeal. Furthermore, because of the tremendous financial loss which could be occasioned by the finding of one "obscene" book on the premises of a bookstore, the mere fact that this law might be used and that prosecutions are indeed being sought under it, could have, as I see it, an extremely serious "chilling effect" on guaranteed First Amendment freedoms. This point is elaborated *infra*.

8. The plaintiffs attempt to challenge the underlying statutes arguing that Gable v. Jenkins, *supra*, did not include a challenge on the grounds they now raise. Because

of my feelings on the nuisance statute itself, I do not reach this issue.

9. The challenge to the statute in the instant case is really more than a mere claim of vagueness or overbreadth. The state is asserting that under certain circumstances, not within those currently well-recognized, e. g. "clear and present danger", interfere with the distribution of admittedly protected literary materials. Thus, this is a case which goes further than merely requiring statutory construction.

ample wherein intervention would be proper:

> For example, as long ago as the Buck case, supra, we indicated: "It is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Watson v. Buck, 313 U.S. [387,] at 402, 61 S.Ct. [962], at 967 [, 85 L.Ed. 1416]. 401 U.S. at 53–54, 91 S.Ct. at 755.

I feel that the dangers from nonintervention in this case and the way this statute is written give sufficient justification for federal intervention on the grounds of special circumstances. It is not the issue of obscenity or non-obscenity of these materials nor the question of the constitutionality of the Georgia definition of "obscene" which compels intervention. Rather, this statute directly impinges on the right to disseminate unquestionably protected First Amendment materials and I cannot perceive any reasonable construction of the statute which would save it from invalidity.[10]

It is my opinion that a state can never enjoin the future operation of a store which disseminates presumptively First Amendment protected materials solely on the basis of the nature of the materials which were sold in that store in the past. Even if every item in that store were to be held legally obscene, I do not think that an injunction against any future sale of any literary material whatsoever at that site or by the proprietors could ever be held constitutional. In passing, I note again that the state's agents admitted that not all of the material currently in the Harem Bookstore is

legally obscene. Therefore, allowing closure of this store as a public nuisance would prohibit the sale of protected First Amendment materials. The state does not challenge this statement.

Furthermore, it is my opinion that the state can never confiscate and destroy protected First Amendment materials no matter where they are found. Part of the remedy which the statute encompasses in the abatement context allows seizure of all literary material and fixtures found in the bookstore. This would unquestionably allow the state to seize and destroy as contraband protected materials and this is, indeed, the position which the state has taken in the state court proceeding we are asked to enjoin. I do not feel that where First Amendment materials are concerned the state has any right to seize and destroy protected materials merely because they are found in conjunction with unprotected ones. I do not believe the First Amendment allows such state action even as a penalty of forfeiture. I reject an analogy to confiscation of automobiles hauling non-taxpaid whiskey because of the special protection afforded First Amendment materials.

The statute itself is simple and straightforward. It defines any business wherein certain unprotected materials are found, those obscene under the criminal definition, as a public nuisance, subject to abatement. It is my view that there is no way to construe abatement of a public nuisance to avoid the constitutional infirmity I have set forth above. While the Georgia court might construe the statute narrowly to avoid the problem of seizing and destroying unquestionably protected First Amendment materials, I can see no way that the problem of closing the store or forc-

---

10. The majority points out as another reason for invoking abstention that this is a recent statute which has to date not been construed by the Georgia courts. In discussing my position that no construction of the statute could be constitutional, I set forth two reasons why I feel awaiting a state court interpretation of the statute

would be futile. First, as noted, I cannot perceive any construction of the statute which will save it and, secondly, I feel that we already have a sufficient indication of the Georgia Supreme Court's position on this issue which illustrates the futility of awaiting a new construction from that Court.

ing it to cease operation as a bookstore can be read out of abatement of a public nuisance. The most which a state can do, in my opinion, is to bring prosecution under its criminal laws or bring specific actions for declaration of obscenity of specific materials, thus subjecting that to seizure and destruction. In that I feel this statute clearly goes beyond that, I can find no saving construction.[11]

Use of this nuisance procedure is an attempt by the state to avoid what it feels are difficulties in the two methods currently available to the state in its battle with those who disseminate what it feels are undesirable literary materials. I feel that the existing methods, despite some problems, are fully adequate for protecting the state's interest without unduly trampling First Amendment rights. The state, however, apparently feels that available measures are too restrictive and has opted in this statute for a blanket approach which will "rid them of the vermin" in one fell swoop. Criminal prosecutions are difficult with the requirements of a unanimous jury verdict based on evidence beyond a reasonable doubt. Civil actions to determine specific materials obscene are difficult because they require a book by book determination of obscenity. The nuisance approach, however, allows the state to close down and totally eliminate the stores altogether upon the finding of a single legally obscene volume. This avoids the aforementioned difficulties inherent in the other proceedings.

I feel that the Supreme Court of the State of Georgia may have already approved of the use of the public nuisance approach to closing down activities involving "obscene" materials. In Evans Theatre Corporation v. Slaton, 227 Ga.

337, 180 S.E.2d 712 (1971), prior to the passage of the statute challenged herein, the Georgia Supreme Court stated that where dealing with allegedly obscene materials equity may act to enjoin an existing or threatened public nuisance. At oral argument the representatives of the state admitted that the challenged code section was drafted with reliance on this decision. While the *Evans* case is distinguishable because it involved showing of a film, in light of previous decisions in the area of obscene materials and freedom of speech and the press by the Georgia Supreme Court, I see no reason to delay the invalidation by this court of a statute which I feel is totally unconstitutional.

I also feel that there is directly threatened irreparable injury both in the pecuniary damage to which these plaintiffs are subjected and the potentially tremendous "chilling" effect of prosecutions under this statute with regard to others. While these alone might not always justify intervention, when they are combined with the clear danger to undeniably protected materials which is so obviously present in this case, the balance is then tipped toward intervention. Once the *Younger-Palaio* problem is resolved, all other arguments for nonintervention seem to pale in light of the threatened harm to constitutionally protected rights.[12]

In summary, it is my opinion that the issue of the legal theory of abatement of a public nuisance as envisioned by Georgia Code Annotated, Title 26, Section 2103, providing: "The use of any premises in violation of any of the provisions of this Chapter [relating to obscene materials] shall constitute a public nuisance", and the state's attempted means of abatement can never be constitution-

---

11. To hold that the statute only allows seizure of materials already adjudicated obscene would be to make the statute useless since the state already has that power.

12. I can only point to the complete and cogent evaluation of abstention when First Amendment values are involved, set

forth by Judge Irving Goldberg of the Fifth Circuit in Hobbs v. Thompson, 1971, 448 F.2d 456. This excellent analysis points up the need for swift action in the federal courts to ensure adequate protection of the freedoms of speech and the press. In my mind it settles all other issues about abstention in this case.

ally permissible under any reasonable construction of that statute because it would directly and admittedly impinge the sale of constitutionally protected matter. It cannot be limited to apply only to circumstances where the abatement is only of materials adjudicated obscene and still retain any viable meaning. Therefore, any reasonable basis for this statute's existence and for the terminology it contains, the statute must be intended to do exactly what the state alleges it gives them authority to do, at least with regard to closing the premises and enjoining future bookstore sales. I simply see no way that this statute can avoid conflict with the First Amendment as made applicable against the states by the Fourteenth Amendment, and, as stated above, I see no reason for abstention.