Clyde **NIHISER**, d/b/a Movieland Drive-In Theater, Plaintiff,

v.

The Honorable Theodore L. **SENDAK**, in his capacity as Attorney General of the State of Indiana, et al., Defendants.

Civ. No. 73 F 93.

United States District Court,
N. D. Indiana,
Fort Wayne Division.

June 4, 1974.

John F. White, Indianapolis, Ind., Richard J. Sullivan, Decatur, Ind., for plaintiff.

Darrel K. Diamond, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

Before SWYGERT, Circuit Judge, BEAMER, Chief District Judge, and ESCHBACH, District Judge.

## MEMORANDUM OF DECISION AND ORDER

This civil rights action is before the court on defendants' consolidated motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., and motion to strike pursuant to Rule 12(f), Fed.R.Civ.P. Defendants' motions will be denied.

Plaintiff filed his complaint on October 19, 1973, seeking a temporary restraining order and temporary and permanent injunctions to restrain defendants from proceeding under Public Law 336 of the 1973 Acts of the Indiana General Assembly. I.C. 35–30–10.5 (hereinafter referred to as the Indiana Nuisance Statute). The Indiana Nuisance Statute provides procedures for declaring a place which produces or displays obscene films a nuisance. Injunctive relief was sought by plaintiff under the provisions of 42 U.S.C.A. § 1983, 28 U.S.C.A. § 1331, 28 U.S.C.A. § 1343, 28 U.S.C.A. § 2284(3) and Rule 65, Fed.R.Civ.P. Plaintiff also sought to have the Indiana Nuisance Statute declared unconstitutional, basing jurisdiction for declaratory relief on 28 U.S.C.A. §§ 2201, 2202 and Rule 57, Fed.R.Civ.P. A three-judge court was sought pursuant to 28 U.S.C.A. §§ 2281 and 2284 and upon a finding by the court on October 19, 1973, that plaintiff's complaint presented a substantial federal question, the court requested the convening of a three-judge court. On October 29, 1973, the request was granted, and a three-judge court was designated.

The facts are not substantially disputed. On October 12, 1973, defendant Daniel C. Burry, Prosecuting Attorney for Adams County, Indiana, filed a verified petition to enjoin and abate a public nuisance. On the same day, a restraining order was issued from the Adams Circuit Court by the Honorable Myles F. Parrish, also a defendant in this action. A subpoena duces tecum was issued ordering plaintiff to appear before the Adams Circuit Court and to bring with him the film "Deep Throat" along with all other motion pictures he had in his possession and a list of titles and play dates for all films exhibited over the last three years. Notice and summons to appear for a hearing on a temporary injunction to abate a public nuisance requested in the petition were also issued on that date.

On October 18, 1973, plaintiff brought the instant action alleging that Adams

County Prosecuting Attorney Burry, Adams Circuit Court Judge Parrish, and Indiana Attorney General Sendak, by enforcement of the Indiana Nuisance Statute were depriving or planned to deprive plaintiff of his rights under the United States Constitution. The complaint alleges that the Indiana Nuisance Statute as written and as applied to plaintiff is an example of an unconstitutional prior restraint on First Amendment rights. Plaintiff alleges that defendants are attempting under color of state law to suppress motion pictures presumptively protected under the First Amendment without a prior determination that said films are in fact obscene under current Constitutional standards. Such an attempt is alleged to constitute a prior restraint on 1st, 5th and 14th Amendment rights in that it restricts plaintiff in the exercise of his rights to see, disseminate and distribute presumably protected material to the interested adult public of Adams County, Indiana, as well as infringing on the rights of those adults to view such material. Consequently, since the statute operates as a prior restraint on protected rights, it does and will continue to have a chilling effect on 1st Amendment freedoms. It is alleged such conduct of defendants by enforcement and use of the statute perpetuates such a chilling effect on the rights of plaintiff and the adult citizens of Adams County, Indiana, to view non-obscene films.

Plaintiff also asserts that his 1st and 5th Amendment rights are violated by use of the Indiana Nuisance Statute because the acts proscribed are defined in such vague and indefinite terms that normal men must guess at their meaning. In the absence of adequate safeguards, it is alleged that such vague and overbroad provisions are a violation of procedural due process required by the 5th Amendment. These alleged vague and overbroad provisions are said to be susceptible of sweeping and improper application by defendants, amounting in practice to impermissible censorship powers which will constitute a prior restraint on the exercise of First Amendment rights and have an inhibiting and chilling effect on the exercise of such rights.

Plaintiff further alleges that defendants' conduct in seeking to close plaintiff's business deprives plaintiff of his 5th Amendment rights. It is stated that defendants' conduct is aimed at intimidating plaintiff in the conduct of his trade or business and that plaintiff will suffer a complete loss of profits. It is also argued that plaintiff has suffered and will suffer damage by interference with his business relations and that this will cause him irreparable harm and incalculable loss for which no remedy exists at law.

It is further alleged that the Indiana Nuisance Statute violates "substantive due process" of the 5th and 14th Amendments by authorizing a deprivation of liberty and property interests by defendants by use of unreasonable, arbitrary and capricious means without a showing of any real and substantial relationship to a state interest compelling enough to justify state action to limit the exercise of plaintiff's Constitutional rights. It is alleged that equal protection is violated by rendering a business subject to closure under the guise of abating a nuisance on the basis of isolated transactions as to a few out of thousands of presumptively protected motion pictures without having to show that a nuisance exists. Because of such violations of plaintiff's Constitutional rights, plaintiff seeks to have the Indiana Nuisance Statute declared unconstitutional and seeks an injunction to prevent defendants from proceeding under its provisions.

Defendants moved to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted. Defendants first argue that allegations in the complaint that the Indiana Attorney General and the Prosecuting Attorney for Adams County are necessary parties are not supported by

the statutory language. It is also argued that the Indiana Nuisance Statute is constitutional because it complies with all the requirements set forth by the United States Supreme Court's recent decisions on obscenity. *See, Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct 2628, 37 L.Ed.2d 446 (1973); *Kaplan v. California,* 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); *United States v. 12 200-ft. Reels of Super 8mm Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973). The defendants challenge plaintiff's allegations that the Indiana Nuisance Statute is not sufficiently explicit in describing the proscribed acts as required by *Miller, supra.* Defendants argue that the Indiana courts may construe the Indiana Nuisance Statute in the future to comply with the dictates of *Miller.* The Supreme Court in *Miller* sanctioned such construction in order to save state statutes, the constitutionality of which may have been jeopardized by the new ruling. In addition, defendants argue that this is a civil suit and that the recent rulings by the Indiana Supreme Court that criminal statutes employing identical language to define the proscribed acts were unconstitutional have no bearing on the instant action. It is argued that the state has an interest in enjoining public nuisances and that issuance of an injunction in order to abate a public nuisance is an effective and constitutional method. It is argued that the Indiana Nuisance Statute does not operate as a prior restraint in that it is only aimed at pornographers. It is further argued that the only order which can be issued prior to an adversary hearing was approved by the Supreme Court. Thus, defendants seek a dismissal of the action.

Defendants also argue that this case is a proper one for the application of the abstention doctrine. Defendants submit that this action is one in which the federal court should abstain to allow interpretation of the statute in Indiana courts. Thus, defendants argue the case should be dismissed for reasons of comity between state and federal courts.

Finally, defendants move to strike paragraph four in the prayer for relief on the grounds that it is vague. All of the defendants motions will be denied.

### I.

The first question raised in defendants' motion to dismiss is whether the Attorney General of the State of Indiana and the Prosecuting Attorney for Adams County, Indiana, are "necessary parties." The amended complaint states that Attorney General Sendak and Prosecuting Attorney Burry were named as defendants because they were officials authorized under the Indiana Statute "either initially or as a necessary party of the State of Indiana, to abate a 'nuisance' . . . ." Section 3 of the Indiana Nuisance Statute provides that:

> [w]henever a nuisance exists, the attorney general, the prosecuting attorney of the county in which such nuisance exists, or any person who is a resident of such county may bring an action to abate such nuisance and to perpetually enjoin the person maintaining the same from further maintenance thereof. IC 35–30–10.5.

It is clear that the statute authorizes the Attorney General for the State and the prosecuting attorneys of the counties to commence actions pursuant to the statute's provisions. It is the Attorney General for the State and the county prosecuting attorneys who are charged with the primary duty of seeking abatement of nuisances on behalf of the State. Although the statute provides that a private citizen may bring an action, certain restrictions are placed on any such action. Since the named public officials have the authority to proceed under the statute, they are proper parties defendant.

### II.

Plaintiff's allegations that the Indiana Nuisance Statute is unconstitutional is

more seriously contested. The statute in Section 2 provides that a person who owns, conducts or is employed by the owner of a nuisance shall be guilty of maintaining a nuisance and shall be enjoined. Section 1(d) provides that:

"Nuisance" means any place . . . in or upon which lewd, indecent, lascivious, or obscene films or plate negatives, film or plate positives, films designed to be projected on a screen for exhibition films, . . . are . . . screened, exhibited, or otherwise prepared or shown, and the personal property and contents used in conducting and maintaining any such place for any such purpose. . . .

Plaintiff challenges this section alleging that the recent Supreme Court holding in *Miller v. California, supra* requires more specificity in defining the proscribed acts than is set out by the Indiana Nuisance Statute. Defendants argue that the Indiana Nuisance Statute fully complies with *Miller's* standards.

In *Miller v. California, supra*, the Supreme Court reaffirmed the holding that obscene material is not protected by the First Amendment. *Id.*, 93 S.Ct. at 2614. However, while recognizing the right of the states to limit the dissemination of obscene materials, the Court acknowledged that inherent dangers exist in attempting to regulate any form of expression. The Court then cautioned that state statutes attempting to regulate obscene materials must be carefully limited. The Court set forth a new standard for testing the constitutionality of state statutes:

. . . we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. *Id.*, 93 S.Ct. at 2614–15.

*See also, Paris Adult Theatre I v. Slaton, supra*, 93 S.Ct. at 2641–42. Plaintiff argues that the words "lewd, indecent, lascivious, or obscene . . . ." do not meet the specificity standard set forth by the Court in *Miller*. To counter this argument defendants point to footnote six of the Court's opinion in *Miller, supra*, 93 S.Ct. at 2615. This footnote was a response by the majority of the Court to an argument by Mr. Justice Brennan in his dissent in *Paris Adult Theatre I v. Slaton, supra*, 93 S. Ct. at 2653, Footnote 13. Mr. Justice Brennan had observed:

While the Court's modification of the *Memoirs* test is small, it should still prove sufficient to invalidate virtually every state law relating to the suppression of obscenity. For under the Court's restatement, a statute must specifically enumerate certain forms of sexual conduct, the depiction of which is to be prohibited. It seems highly doubtful to me that state courts will be able to construe state statutes so as to incorporate a carefully itemized list of various forms of sexual conduct, and thus bring them into conformity with the Court's requirements.

Mr. Justice Brennan, whose dissent was joined by Justices Stewart and Marshall, argued that under the new standards enunciated by the Court all states but Oregon would be forced to re-write their obscenity statutes to meet the required level of specificity. The majority in footnote six responded: "other existing state statutes, as construed heretofore or hereafter, may well be adequate." Defendants argue that the Indiana Nuisance Statute may well be supplied with a construction meeting the required level of specificity and that the statute should not be ruled unconstitutional. It is argued that the statute under attack is a civil statute and need not be strictly construed. Defendants argue that the decisions of the Indiana Supreme Court holding that the State's criminal obscenity statutes are unconstitutional are not applicable.

It should be noted that the majority did not challenge Mr. Justice Brennan's statement that a state statute

must specifically enumerate certain forms of sexual conduct to meet the *Miller* requirements. The majority merely took issue with his observation that state courts will not be able to supply their obscenity statutes with a definition of the proscribed conduct in terms sufficiently specific to comport with *Miller's* dictates. Therefore, plaintiff's attack on the statutory definition of nuisance has a sound basis under *Miller's* standards. It is not necessary, in considering a motion to dismiss, to determine whether the Indiana Nuisance Statute is constitutional. On a motion to dismiss, pursuant to Rule 12(b)(6), Fed.R.Civ.P., it is only necessary to decide whether plaintiff presents any valid claim for relief in his complaint. *Orphan v. Furnco Constr. Corp.*, 466 F.2d 795 (7th Cir. 1972); *Jung v. K & D Mining Co.*, 260 F.2d 607 (7th Cir. 1958); C. Wright & A. Miller, Federal Practice And Procedure § 1357 (1969). Defendants' arguments that plaintiff's complaint does not state a cause of action cannot be accepted. As pointed out above, the Supreme Court in *Miller* required that state statutes designed to regulate obscenity must be carefully limited. *Id.*, 93 S.Ct. at 2614. This requirement was not aimed only at state criminal statutes. *See, Paris Adult Theatre I v. Slaton, supra.* In addition, the Court in *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), *rehearing denied*, 361 U.S. 950, 80 S.Ct. 399, 4 L.Ed.2d 383, stated that:

> Stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser. *Id.* at 151, 80 S.Ct. at 217–18.

The new requirement that statutes dealing with obscenity must specifically describe the acts prohibited focuses on this principle. Thus, whether the Indiana Nuisance Statute is labeled as civil or criminal will not change the requirement that the prohibited conduct must be specifically described.

The argument that the statute is not criminal and need not be strictly construed against the state will not save a constitutionally defective statute. The state can no more trammel the rights guaranteed in the Constitution by use of a civil statute than it can by use of a criminal statute. The argument that the statute need not be strictly construed because it is not criminal is of no effect in light of the express requirement set out in *Miller* that state statutes regulating obscenity must specifically describe the illegal acts.

Although the Indiana Nuisance Statute provides a civil remedy, it contains many punitive features and is couched with language indicating its quasi-criminal nature. Section 2 of the Indiana Nuisance Statute provides that:

> Any person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets therein, and the owner, agent, or lessee of any interest in any such nuisance together with the persons employed in or in control of any such nuisance by any such owner, agent, or lessee *is guilty of maintaining a nuisance* and shall be enjoined as provided in sections 3 to 6 inclusive of this chapter. (Emphasis added).

The fact that a person can be found "guilty" of maintaining a nuisance and the fact that the statute is a part of the Criminal Code indicate its punitive nature. Also Section 8 of the Statute provides for the imposition of a tax of $300 on one against whom an injunction for maintaining a nuisance was issued. But if a person is found "innocent" or has abated the nuisance, no such "tax" is imposed. This would indicate that the tax authorized by the statute is in the nature of a fine imposed for violating the statute. Yet the safeguards normally required in a criminal action, including guilt beyond a reasonable doubt, are not required. The punitive nature of the statute is obvious when it can be

used to fine a person, confiscate his property or terminate his business.

In *Mohney v. State,* 300 N.E.2d 66 (Ind.1973) and *Stroud v. State,* 300 N.E.2d 100 (Ind.1973), the Indiana Supreme Court held that the Indiana criminal obscenity statute was unconstitutional. The cases were before the court on remand from the Supreme Court of the United States, 413 U.S. 911, 93 S.Ct. 3040, 37 L.Ed.2d 1020 (1973), and 413 U.S. 911, 93 S.Ct. 3038, 37 L.Ed.2d 1025 (1973), for consideration in light of *Miller* and its companion cases. The court held that the statute was too general in nature and did not specifically set forth the sexual or obscene acts which would constitute a violation of the statute. *See also, Mohney & Geraghty v. State,* 300 N.E.2d 678, 38 Ind.Dec. 364 (Ind.App.1973). The statute found in violation of the First Amendment defined the proscribed acts in terms of "obscene, lewd, indecent or lascivious," the same words used in the Indiana Nuisance Statute. *See* I.C.1971, 35–30–10–1 [Burns' Ind. Stat.Ann. § 10–2803 (1956 Repl.)]; I.C.1971, 35–30–10–3 [Burns' Ind.Stat.Ann. § 10–2803a (1956 Repl.)]. No attempt was made by either the Indiana Supreme Court or the Appellate Court to construe either section of the statute to impart the required specificity. Thus, the Indiana courts have had opportunities to construe the words challenged in this suit and to more specifically describe what would constitute an "obscene, lewed, indecent or lascivious" act and have declined to do so. Plaintiff's attack on the Indiana Nuisance Statute does raise substantial constitutional questions and is not subject to dismissal for failure to state a claim upon which relief can be granted.

Defendants argue that *Paris Adult Theatre I v. Slaton, supra,* is materially the same as the instant action and supports defendants' position. Defendants argue that in *Evans Theatre Corp. v. Slaton,* 227 Ga. 377, 180 S.E.2d 712 (1971) (cited by the United States Supreme Court in *Paris Adult Theatre I)*

it was recognized that the state has the right to maintain an action to enjoin an existing or threatened public nuisance. Defendants argue that the Indiana Nuisance Statute is within the scope of approved state action under *Paris Adult Theatre I* and *Miller* since the statute only applies to cases involving the showing of films which come within the definition of obscene. Without reviewing the difficulties encountered in trying to determine which films come within the definition of obscene, it is clear that the *Paris Adult Theatre I* case and the *Evans Theatre Corp.* case do not dispose of the problems presented in the instant action. In *Paris Adult Theatre I,* the Court upheld the use of a civil injunction of the exhibition of obscene materials even under a statute which adopts the criminal definition of "obscene materials." *Paris Adult Theatre I v. Slaton, supra* 93 S.Ct. at 2633. The Court held that the Georgia statutory procedure did not constitute a prior restraint on First Amendment rights and that Georgia had a legitimate right to regulate commerce in obscene material and also regulate the exhibition of obscene material. However, the Court premised this holding on the provision that applicable Georgia law, as written or authoritatively interpreted by the Georgia courts complied with the newly adopted standard of specificity. The Court consequently remanded for a determination of whether the *Miller* standards were met.

It is clear that the *Paris Adult Theatre I* case and the *Evans Theatre Corp.* case support defendants' arguments that a state can regulate the dissemination of obscene materials by the use of civil injunctions. However, it is not questioned that a civil remedy of this nature can be used to combat obscenity provided constitutional safeguards are met. But this is not an issue in this case. The questions presented in the instant action in relation to the statute are: (1) is the definition of "nuisance" sufficiently specific under *Miller* standards and (2) do the procedures employed in the statute

violate due process or impose prior restraints? The first question was not answered by the Supreme Court in *Paris Adult Theatre I*. The second question was presented in *Paris Adult Theatre I*, but the Georgia statutory procedure was much different than that utilized in the Indiana · Nuisance Statute. Thus, it is not at issue whether Indiana can regulate obscenity by enjoining the proscribed activity. What is at issue is whether the definition of prohibited acts and procedures authorized to remedy a violation are proper under First, Fifth and Fourteenth Amendment standards. Defendants' arguments fail to convince this court that no valid claim or issue is presented.

### III.

On October 12, 1973, a restraining order was issued by the Adams Circuit Court ordering plaintiff and anyone else who claimed any ownership rights, title or interest in the motion picture film entitled "Deep Throat" to refrain from

> "removing or in any way or in any manner interfering with any of the personal property, film or films or contents of the location known as Movieland Drive-In Theatre until the date of the hearing on the temporary injunction. . . ."

This order was posted with the admonition that its removal or mutilation was punishable by contempt of court.

This restraining order was issued pursuant to Section 4 of the Indiana Nuisance Statute which provides in part:

> Where such application for a temporary injunction is made, the court may, on application of the complainant, issue an ex parte restraining order, restraining the defendant and all other persons from removing or in any manner interfering with the personal property and contents of the place where such nuisance is alleged to exist until the decision of the court granting or refusing such temporary injunction and until the further order of the court thereon.

This section also requires the officer who serves the order to make and return into court an inventory of the personal property and contents situated and used in conducting or maintaining such nuisance.

■ Plaintiff argues that an order of this type violates his First and Fourteenth Amendment rights in that it constitutes an illegal prior restraint on the exercise of those rights. Defendants contend that the issuance of an order of this type prior to an adversary hearing and judicial determination on the merits of the obscenity issue is not in violation of any constitutionally protected rights and is a procedure approved by the United States Supreme Court in *Paris Adult Theatre I v. Slaton, supra.* However, this case does not support defendants' argument. The *ex parte* order approved in *Paris Adult Theatre I* specifically provided that, although the films could not be removed from the premises until the date of the hearing, it was permissible for the owners to exhibit them and, thus, no prior restraint on exhibition existed. Under the Indiana Nuisance Statute and the order issued by the Adams County Circuit Court, which is framed in the language of the statute, the person charged with maintaining the nuisance is prohibited from "interfering" with the personal property and contents of the place until the hearing on the temporary injunction. Whether "interfering" could encompass an exhibition of the film is not clear. Plaintiff is entitled to show that the statute could be used to prohibit exhibition prior to an adversary hearing on the obscenity issue. Defendants are not entitled to dismissal since plaintiff does present a valid attack on Section 4 of the Indiana Nuisance Statute. *See, Pursue Ltd. v. Huffman*, No. C 72–432 (N.D.Ohio W.D. April 20, 1973).

Plaintiff relies on *Pursue Ltd. v. Huffman, supra*, in support of his argument that this action to abate a nuisance under the Indiana Nuisance Statute constitutes a prior restraint on his First

Amendment rights. In *Pursue* the court was presented with a constitutional attack on three sections of the Ohio Nuisance Statute, O.R.C. §§ 3767.01 *et seq.*, which are almost identical to corresponding sections of the Indiana Nuisance Statute. The court held that the definition of "nuisance" in O.R.C. § 3767.-01(C) as "any place, in or upon which lewd, indecent, lascivious or obscene films . . . are . . . exhibited" afforded adequate protection to constitutional rights. However, this decision was reached before *Miller*, and its continued vitality under the new constitutional standards is questionable.

The *Pursue* court also held that O.R.C. § 3767.04 was unconstitutional insofar as it authorizes the state courts to close theatres without a prior adversary hearing on the obscenity question. That section of the Ohio Nuisance Statute, which in material respects is identical to Section 4 of the Indiana Act, had provided that, if, at the time the temporary injunction is issued, and unless the owner of the nuisance shows that it is abated, an order shall issue closing the place for any purpose of lewdness, etc. Thus, plaintiff argues that the *Pursue* decision supports its position that the Indiana statute is unconstitutional because it provides remedies which can be used and are being used as a restraint on plaintiff's First Amendment rights. Defendants deny that Section 4 authorizes unconstitutional procedures and state that no prior restraints are imposed because a hearing is provided prior to the issuance of a temporary injunction.

 Any system of prior restraints on expression comes before the court bearing a heavy presumption against its constitutional validity. *Bantam Books Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). However, the protection against prior restraints is not unlimited and where obscene matters are involved an exception to an absolute ban on prior restraints exists. *Near v. State of Min-*

*nesota ex rel. Olson,* 283 U.S. 697, 51 S. Ct. 625, 75 L.Ed. 1357 (1931); *Kingsley Books v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). But any restraint on First Amendment rights is tolerated only where it operates under judicial supervision where the defendant can be assured of an almost immediate judicial determination of the validity of the restraint. *Bantam Books Inc. v. Sullivan, supra* 372 U.S. at 70, 83 S.Ct. 631, 639. *See also, Kingsley Books Inc. v. Brown, supra.* The ,Fourteenth Amendment requires that regulation by the states of obscenity must conform to procedures which will safeguard constitutionally protected expression. *Bantam Books Inc. v. Sullivan, supra.* Regulations of obscenity must scrupulously embody the most rigorous procedural safeguards. *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); *Marcus v. Search Warrants,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). Therefore,

[a]ny restraint imposed in advance of a final judicial determination on the merits must . . . be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution.

*Freedman v. Maryland,* 380 U.S. 51, 59, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965).

Section 4 of the Indiana Nuisance Statute is challenged in the instant action because it is alleged not to provide the procedural safeguards mandated by the Supreme Court. In *Pursue Ltd., supra,* similar provisions were ruled unconstitutional if they operated to allow closing a theater without a prior adversary hearing on obscenity. In *Kingsley Books v. Brown, supra,* 77 S.Ct. at 1328, the court stated that it is necessary to look at the operation and effect of the statute in order to determine whether it affects a prior restraint. Plaintiff has the right to prove that the operation of Section 4 of the Indiana Nuisance Statute will create a prior restraint on pro-

tected rights. For this reason his claim cannot be dismissed.

The court in *Pursue Ltd., supra,* held that O.R.C. § 3767.06 was unconstitutional. This statute provided that upon a determination that a nuisance existed on a given premise, the court could order the premises closed *for any purpose* for a period of one year unless the owner obtains a release from such order by demonstrating that the nuisance has been abated. Section 6 of the Indiana Nuisance Statute is similar to O.R.C. § 3767.06 except that it does not allow closing the place "for any purpose" but only for further maintaining the place as a nuisance. Although the *Pursue Ltd.* court focused on the language "for any purpose," the court also stressed the fact that the statute made no provision for a hearing on any of the films which the owner intended to show during the one year period. The Indiana statute only enjoins maintaining the place as a nuisance but it does not provide for any hearings to determine whether films which the owner may have proposed to exhibit during the year enjoined were protected by the First Amendment. Instead, the statute puts the burden on the owner to prove that he has abated the nuisance, and of persuading the courts that the movies he plans to show are protected by the First Amendment. But the First Amendment demands that the Government must assume this burden. *Blount v. Rizzi,* 400 U.S. 410, 418, 91 S. Ct. 423, 429, 27 L.Ed.2d 498 (1971). The infirmity of this Section of the Indiana Nuisance Act is summarized by the *Pursue* court's description of the defects in O.R.C. § 3767.06:

. . . upon a determination that as few as one or two films shown at a given theatre are obscene, the theatre can be ordered closed under this Sec-

tion for a period of one year regardless of the nature of any other films which the owner or operator may have intended to show during that period, with the burden falling on the owner to come into court and prove the nonobscenity of any such other films. Although the Indiana Nuisance Statute in Section 6 does not allow closing the theater for all purposes, it will have such an effect unless it is determined beforehand what films the exhibitor proposes to show during that year will not constitute a nuisance. The statute leaves the burden on the exhibitor to seek judicial approval for each film. Thus, the *Pursue Ltd.*[1] decision does raise questions concerning prior restraints which plaintiff has a right to argue apply equally to the Indiana Nuisance Statute. Dismissal of the action would deprive him of this opportunity and it is unwarranted.

In summary, plaintiff presents sufficient legal questions to state a cause of action and avoid dismissal under Rule 12(b)(6). The definitional sections of the statute are properly challenged in light of the *Miller* standards. It is also arguable that many of the procedures authorized by the statute can be used to effectuate prior restraints on First Amendment rights or deny due process. Plaintiff does state a claim upon which relief can be granted.[2]

### IV.

Defendants argue that this action is one in which the federal court should abstain in order to allow the Indiana court to interpret the statute. It is argued that construction of the statute may eliminate some of its unclarity and perhaps avoid the constitutional question. Although defendants' argument presents a difficult question for

---

1. The United States Supreme Court has granted review of this case. The Court presumably will review the constitutionality of the Ohio Nuisance Statute and will also review the abstention issue. *Huffman v. Pursue Ltd.,* 415 U.S. 974, 94 S.Ct. 1559, 39 L. Ed.2d 870 (1974).

2. For a more detailed analysis and critique of the Indiana Nuisance Statute, *see,* Note, Defects in Indiana's Pornographic Nuisance Act. 49 Ind.L.J.—(1974).

the court, this case is not a proper one in which principles of comity require abstention by this court.

It is a clearly established principle that the federal courts are charged with the primary duty of vindicating federal rights. *Escalera v. New York City Housing Authority*, 425 F.2d 853, 865 (2nd Cir. 1970), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). The federal courts have a duty to hear cases which Congress has extended jurisdiction of to the courts unless an exception to the exercise of that jurisdiction exists. *Federal Savings and Loan Ins. Corp. v. Krueger*, 435 F.2d 633, 637 (7th Cir. 1970). One such exception is the so-called abstention doctrine which was set forth in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The doctrine requires that when a federal court is presented a controversy which involves unsettled questions of state law, the federal court should defer decision on the federal question until the state court has had a reasonable opportunity to construe or interpret the state law. *See, Railroad Comm'n of Texas v. Pullman Co., supra; England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440 (1964); Pell, *Abstention—A Primrose Path by Any Other Name*, 21 DePaul L.Rev. 931, 32 (1972). The paradigm case for abstention is one where a construction by the state courts of the challenged statute could avoid or modify the federal constitutional question. *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972); *Harrison v. N.A.A.C.P.*, 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959).

In *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the court held that the Anti-Injunction Statute, 28 U.S.C.A. § 2283 does not prohibit a federal court from enjoining state court action pursuant to provisions of the Civil Rights Act, 42 U.S.C.A. § 1983. However, the court pointed out that the holding in the case did "not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Id.*, 92 S.Ct. at 2162. In the concurring opinion of Mr. Chief Justice Burger, in which Justices White and Blackmun joined, it was stated that these principles of equity, comity and federalism in the context of the pending state *criminal* proceedings allow a federal court to issue an injunction in only a narrow set of circumstances. It was then stated that the Court has not yet reached the question of how great a restraint is imposed on a federal court by these principles when asked to enjoin state civil proceedings. *Id.*, 92 S.Ct. at 2163.

Considerations of comity are less compelling in a civil case in that the offense to state interests is less extensive. *See Younger v. Harris*, 401 U.S. 37, 55, 91 S.Ct. 746, n. 2, 27 L.Ed.2d 669 (1971) (concurring opinion of Justice Stewart); *Cousins v. Wigoda*, 463 F.2d 603 (7th Cir. 1972), *appeal denied*, 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15.

However, the burden on the individual plaintiff is also less severe when left to his state court remedies, and the disruptive effect on federalism is not dissipated. *See Lynch v. Snepp*, 472 F.2d 769, 774, n. 5 (4th Cir. 1973). Moreover, attempts to enforce civil provisions such as the one here may be characterized as civil proceedings utilized to enforce the criminal laws and thus subject to *Younger* in any event. *See Palaio v. McAuliffe*, 466 F.2d 1230 (5th Cir. 1972); *Speight v. Slaton*, 356 F.Supp. 1101 (N.D.Ga.1973), *vacated*, 415 U.S. 333, 94 S.Ct. 1098, 39 L.Ed.2d 367 (1974). The best approach is not to regard labels "civil" and "criminal" as controlling, but to analyze the competing interests which each case presents. *See Palaio, supra* at 1233. In any case, a federal court should stay its hand when a single suit would be adequate to pro-

tect the rights asserted. If the federal court is to intervene, it should plainly appear that such a course would not afford adequate protection. *Younger, supra* 401 U.S. at 44–45, 91 S.Ct. at 750–51.

In *Younger v. Harris, supra,* the court held that a federal court cannot enjoin a state criminal action even if the state statute upon which the criminal action is based is attacked as being unconstitutional on its face, and having a chilling effect on constitutional rights. The court did, however, leave room for federal injunctive relief in a pending state action in certain exceptional circumstances where "the danger of irreparable loss is both great and immediate," 401 U.S., at 45, 91 S.Ct., at 751 or where state law is "flagrantly and patently violative of express constitutional prohibitions," 401 U.S., at 53, 91 S.Ct., at 755, or where there is a showing of "bad faith, harassment, or . . . other unusual circumstances" calling for equitable relief. 401 U.S., at 54, 91 S.Ct., at 755. The Court stated that:

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

Taken alone, the fact that plaintiff faces possible sanctions in the state court proceeding is no foundation for holding that the threat to federal rights is one which cannot be eliminated by defense in a single state court proceeding. A civil proceeding to determine the obscenity of certain materials, even when it involves a preliminary injunctive procedure, amounts to no more of a prior restraint than a criminal prosecution. *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). Accordingly, any threat which

the proceeding invokes is not inevitably one which cannot be eliminated through defense in a single proceeding, regardless of any "chilling effect" which may occur as a result. *See Byrne v. Karalexis,* 401 U.S. 216, 220, 91 S.Ct. 777, 779–80, 27 L.Ed.2d 792 (1971). Nor is defense in a single proceeding insufficient because the statutory scheme is susceptible to invalid applications. *See Younger, supra* 401 U.S. at 47, 91 S.Ct. at 752 n. 4. However, in the instant action the issue of obscenity will be decided in an *in rem* proceeding brought in equity to abate a nuisance. Certain criminal protections must necessarily be lost by the use of civil proceedings to enforce the criminal code. *See Speight v. Slaton, supra* at 1105 (dissenting opinion). While this by itself does not make a state court remedy inadequate to protect constitutional rights, it certainly is an important relevant factor to consider in balancing the disruptive effect on federalism which may result if this court should provide injunctive relief against the harm which may be suffered by the plaintiff. In short, it is significant when considering whether "unusual circumstances" exist in this case which would fit it into an exception to *Younger.*

There are several other reasons why intervention in this case is appropriate. The statutory scheme here is arguably in several respects "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941). The prima facie rule is clear and subject to no limiting construction, and thus no state court construction could eliminate the issue presented. It not only places unwarranted burdens in the way of challenges to the application of the definitional sections of the statute but allows restraint of materials without a judicial determination of the alleged obscenity of the

materials and without placing the burden of proof upon the censor. *See Freedman, supra* 380 U.S. at 58, 85 S.Ct. at 739 (burden of proof); *Teitel Film Corp. v. Cusack,* 390 U.S. 139, 141, 88 S.Ct. 754, 756, 19 L.Ed.2d 966 (1968) (judicial determination of obscenity).

Moreover, the remedy provisions provide that upon entry of a final injunction, an order "shall direct the removal from the place of the personal property and contents used in conducting the nuisance," "shall direct the sale of such thereof as belong to the defendants," and that even though obscene materials as defined in the statute "shall be confiscated and destroyed," a closing order shall remain in effect for one year unless the owner of the property furnishes a bond and proves his innocence of any knowledge of the use of the property and that he could not with reasonable diligence have known of such use. "Every defendant in the action is presumed to have had knowledge of the general reputation of the place." I.C. 35–30–10.-5–6.

In addition, Section 5 of the Statute provides that in the action for a temporary injunction to close the establishment until a hearing on the permanent injunction can be had

> "evidence of the general reputation of the place . . . is admissible for the purpose of proving the existence of said nuisance and is *prima-facie evidence* of such nuisance and of knowledge of and of acquiescence and participation therein on the part of the person charged with maintaining said nuisance." (Emphasis added).

"Personal property" as defined in the statute includes "all mechanical equipment used for . . . projection or viewing [obscene films]." I.C. 35–30–10.5–1. Unlike a criminal charge, the nuisance abatement procedures shift the burden to the owner to prove that his place is not a nuisance when there is evidence that the general reputation of the place is that it is a nuisance. Similarly, if the place is closed for one year under

Section 6, the owner again has the burden of showing that he no longer maintains a nuisance or has abated it.

The statute also allows injunctive and closing orders against films which are not yet in dispute since those in dispute must be destroyed; it authorizes the seizure and destruction of materials which have not been declared obscene by application of the prima facie evidence rule, and it authorizes seizure and sale of equipment which can be utilized for protected as well as unprotected materials. Such remedial provisions encourage and allow prior restraint of materials when the nature of those materials has not been determined and allow seizure of any material which can be found on the premises without any judicial determination that any particular material is obscene. The statutory scheme allows seizure and destruction of presumptively constitutional materials or undeniably permitted materials merely because they are found in a place which has a reputation of exhibiting obscene films and allows for permanent future restraint against the exhibition of materials unless the owner carries the burden of demonstrating that they are not obscene. He must determine at his peril what is literally or arguably within the definition of "nuisance." *Cf. Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L. Ed.2d 377 (1964). Under such circumstances, federal intervention is not only allowable, but compelled. *See Speight, supra* at 1104–1105 (dissenting opinion). The statutory scheme directly impinges on the right to disseminate unquestionably protected materials and allows injunction of future operations of a theater disseminating presumptively constitutional materials on the basis of the "reputation" of the theater in the past. Even if such injunctive relief were based on the obscene nature of past exhibitions, it would be objectionable, but its invalidity is even clearer in the instant action where the theater owner may be required to defend not only his showing of "Deep Throat" but any one of the movies run in the last three

years, the titles of which were subpoenaed. *See Speight, supra* at 1107 (dissenting opinion).

We agree with Judge Morgan in *Speight* that the state has no right to seize and destroy protected materials (here, the projection equipment and materials which have been found obscene based on the reputation of the place) merely because they are found in conjunction with unprotected materials. Nuisance procedures such as these are attempts to circumvent the criminal requirements of jury verdicts requiring proof beyond a reasonable doubt and civil proceedings to determine the obscenity of specific materials. Such attempts at abatement can never be constitutionally permissible under any reasonable construction of the statute because they directly impinge on the dissemination of constitutionally protected materials never adjudicated obscene. *See Speight, supra* at 1108–1109 (dissenting opinion).

Finally, the definitional section of the statute is flagrantly and patently in violation of express constitutional guarantees, given the refusal of the Indiana Supreme Court to construe similar language in the corresponding criminal provisions.

*See Mohney v. State,* 300 N.E.2d 66 (Ind.1973); *Miller v. California,* 413 U. S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

Both the Indiana Supreme Court and the Indiana Court of Appeals have been given a reasonable opportunity to construe the language used to define a nuisance but have declined to give it the specificity mandated by *Miller.* In *Mohney v. State, supra,* on remand from the Supreme Court of the United States to the Indiana Supreme Court for reconsideration in light of the recent obscenity cases the Indiana Supreme Court stated:

> [t]he main thrust of those opinions, so far as applicable to this case, is that the statute under which appellant was convicted is unconstitutional for the reason that it is too general in nature and does not set out specifically the sexual or obscene acts which, when depicted in any of the media named by the statute, constitute a violation of the statute.

The Court held that I.C.1971, 35–30–10–3 [Burns' Ind.Stat.Ann. § 10–2803a (1956 Repl.)] was unconstitutional. That statute made it a violation to send into this state "any obscene, lewd, indecent or lascivious literature" etc. These are the exact words used to define a "nuisance" in the Indiana Nuisance Statute. The Indiana Supreme Court has found these words to be insufficiently specific under *Miller* and has refused to construe them. In *Stroud v. State, supra,* the statute, I.C.1971, 35–30–10–1 [Burns' Ind.Stat.Ann. § 10–2803 (1956 Repl.)] was found to be unconstitutional for the same reasons stated in *Mohney.* The statute in *Stroud* also used the words "obscene, lewd, indecent or lascivious" and again the court refused to construe them. *See also, Mohney & Geraghty v. Indiana, supra.* Thus, it cannot be contended that the Indiana courts have not had a reasonable opportunity to construe the words "lewd, indecent, lascivious and obscene" which form the foundation of the Indiana Nuisance Statute.

For the reasons given, this case presents sufficient "unusual circumstances" which warrant the court in declining to abstain from deciding the issues presented.[3]

3. Although too recently decided to be cited by any party to the instant litigation, we have read and considered the case of *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) and conclude that it does not alter our decision that principles of equitable restraint do not require that we abstain in this action for the reasons expressed in this decision. The circumstances, issues and relief requested in the instant action are distinguishable from *O'Shea.* Intervention of this court in the state proceedings as requested by plaintiff would not require an intrusive disruption of state criminal proceedings which was eschewed in *O'Shea.*

## V.

 Defendants move pursuant to Rule 12(f) to strike paragraph 4 of the prayer for relief which states:

And further, from otherwise harassing plaintiff in the conduct of its lawful business, without first securing and providing for, after due notice to the plaintiff, a judicially superintended prior adversary hearing on the issue of obscenity, in the constitutional sense.

Defendants contend that the vagueness of this request requires that it be stricken. This motion is also denied.

 Motions under Rule 12(f), Fed.R.Civ.P., are viewed with disfavor and are infrequently granted. *Teachers Ins. and Annuity Ass'n of America v. Northridge Corp.*, 55 F.R.D. 1 (E.D Wis.1972); *Lippmann Inc. v. Hewitt-Robins Inc.*, 55 F.R.D. 439 (E.D.Wis. 1972). In order for defendants to succeed on the motion to strike, it must be shown that the challenged allegation is unrelated to plaintiff's claims and is so unworthy of any defense that its presence would prejudice the moving party. *Augustus v. Board of Public Instruction of Escambia City, Fla.*, 306 F.2d 862 (5th Cir. 1962); *Dunbar & Sullivan Dredging Co. v. Jurgenson Co.*, 44 F.R.D. 467 (S.D.Ohio 1967, *aff'd*, 396 F.2d 152 (6th Cir. 1968). Although defendants are correct that the challenged paragraph is vague, it cannot cause any prejudice to defendants. If the court determines that plaintiff is entitled to injunctive relief, the court is confident that such relief can be framed without prejudice to either party. In addition, the challenged paragraph is consistent with plaintiff's claims that the challenged statute effectuates a prior restraint in that it does not provide for adequate notice nor provide for a determination of obscenity prior to any action restraining plaintiff. In essence, the challenged paragraph merely requests that the Indiana Nuisance Statute not be enforced against him because of these constitutional defects and prays the court to enjoin any action taken pursuant to that statute. If defendants prove their argument that the Indiana Nuisance Statute already provides for the safeguards requested in paragraph four, then plaintiff's prayer will be denied. If it is found that adequate safeguards are lacking, then the court can frame its order to prevent enforcement of the defective statutory provisions without prejudice to either party. In either case, defendants will not be prejudiced. Therefore, the motion to strike is denied.

Defendants' motion to dismiss for failure to state a claim upon which relief can be granted or because the court is required to abstain from hearing this case is denied. The defendants' motion to strike is also denied.