No. 74–1165.   SENDAK, ATTORNEY GENERAL OF INDIANA *v.* NIHISER, DBA MOVIELAND DRIVE-IN THEATER. Appeal from D. C. N. D. Ind.   Judgment vacated and case remanded for further consideration in light of *Huffman* v. *Pursue, Ltd.,* 420 U. S. 592 (1975).

MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEWART and MR. JUSTICE MARSHALL concur, dissenting.

This is a direct appeal from the decision of the three-judge District Court for the Northern District of Indiana declaring an Indiana obscenity public nuisance statute, Ind. Stat. Ann. § 9–2711 *et seq.* (Supp. 1974) (now codified at Ind. Code § 35–30–10.5–1 *et seq.*), patently unconstitutional under the First and Fourteenth Amendments and enjoining its enforcement.   For some unknown or at least unexplained reason the Court today remands this case for reconsideration in light of *Huffman* v. *Pursue, Ltd.,* 420 U. S. 592 (1975).   I dissent because the three-judge court anticipated that decision and has already discharged the responsibility imposed by that decision.

On October 12, 1973, the prosecuting attorney for Adams County, Ind., filed in the Adams Circuit Court a petition to enjoin and abate appellee's motion picture theater as a public nuisance. On the same day the Circuit Court entered a temporary restraining order with a notice and summons to appear for a hearing on a temporary injunction. Additionally, a subpoena *duces tecum* issued, ordering appellee to produce before the court the film "Deep Throat" and all other motion pictures in his possession, and also a list of the titles and play dates of all motion pictures exhibited by him over the past three years.

The prosecutor was proceeding under the Indiana obscenity public nuisance statute, *supra*. The statute provides that a place which exhibits obscene films is a public nuisance,[1] and provides for a court order requiring the closure for up to one year of any place determined to be a public nuisance.[2] An *ex parte* restraining order may issue for up to 10 days without any prior judicial determination of the obscenity of specific films, and a preliminary injunction may issue if, after hearing, the allegations of the complaint "are sustained to the satisfaction of the court."[3] The statute further provides that at trial the "general reputation of the place" is both admissible and prima facie evidence for proving the existence of the nuisance.[4] If a nuisance is established at trial, an order closing the theater for a year and confiscating all personal property and contents therein shall issue.[5] The owner of a theater closed by either preliminary or permanent injunction may obtain a release from the closing order

---

[1] Ind. Stat. Ann. § 9–2711 (d) (Supp. 1974).

[2] § 9–2716 (Supp. 1974).

[3] § 9–2714 (Supp. 1974).

[4] § 2715 (Supp. 1974).

[5] § 9–2716. (Supp. 1974).

only by posting a bond conditioned on the abatement of the nuisance.[6]

On October 19, 1973, appellee filed suit in the United States District Court for the Northern District of Indiana. The complaint sought a declaratory judgment pursuant to 28 U. S. C. §§ 2201–2202 that the statute under which the prosecutor was proceeding was unconstitutional. The complaint also sought to enjoin any further proceedings in the Adams Circuit Court, relief premised on 42 U. S. C. § 1983. On November 14, 1974, the District Court granted summary judgment in favor of appellee and the relief sought.

The Court today vacates the judgment below and remands for further consideration in light of its decision last Term in *Huffman* v. *Pursue, Ltd., supra. Huffman,* a case involving a similar nuisance statute from Ohio, held that the principles of *Younger* v. *Harris,* 401 U. S. 37 (1971), which limit federal-court equitable interference with state-court criminal proceedings, are also applicable to certain state-court proceedings which are "in aid of and closely related to criminal statutes . . . ." 420 U. S., at 604. Accordingly, the Court in *Huffman* remanded for a determination whether under the facts of the action "extraordinary circumstances" existed bringing the case within the narrow exceptions to *Younger*'s general bar.

But in the instant case, the District Court anticipated *Huffman* and, for the very reasons relied on by this Court in that case, clearly held that *Younger* principles were applicable.[7] That court then proceeded

---

[6] §§ 9–2714, 2716 (Supp. 1974).

[7] The District Court stated:

"[A]ttempts to enforce civil provisions such as the one here may be characterized as civil proceedings utilized to enforce the criminal laws and thus subject to *Younger* in any event. . . . The best ap-

to an extended analysis of the factual situation and concluded that the case fell within the *Younger* exceptions as involving a

> "statutory scheme here . . . arguably in several respects 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " 405 F. Supp. 482, 494 (ND Ind. 1974).

The court concluded that the provisions rendering admissible "general reputation" evidence and constituting such evidence sufficient "prima facie" evidence of the existence of the nuisance imposed an unconstitutional prior restraint upon freedom of expression because there was not first required a judicial determination of the obscenity of any specific materials, and because the censor was not required to bear the burden of proving obscenity. The court emphasized that the statute provided for the seizure and destruction of materials which had never been judicially determined to be obscene, and for the seizure and destruction of constitutionally protected materials "merely because they are found in a place which has a reputation of exhibiting obscene films . . . ." *Id.*, at 495. Furthermore, the court emphasized, once a closing order has issued, the statutory scheme permits future restraints against exhibition of all films unless the owner first discharges the burden of demonstrating their nonobscenity. And if such a showing is made and a release from the closing order obtained, the owner must thereafter "determine at his peril what

---

proach is not to regard labels 'civil' and 'criminal' as controlling, but to analyze the competing interests which each case presents." 405 F. Supp. 482, 493 (ND Ind. 1974).

is literally or arguably within the definition of 'nuisance.'" *Ibid.*[8]

Finally, and of particular significance, the District Court held the definitional section of the statute to be "flagrantly and patently in violation of express constitutional guarantees." *Id.,* at 496. The statute defines as a nuisance a place at which "lewd, indecent, lascivious, or obscene" films are exhibited.[9] The court reached its conclusion upon the authority of two Indiana Supreme Court decisions which struck down criminal obscenity statutes employing the same definition on the ground that it was too general in nature under the principles announced in *Miller* v. *California,* 413 U. S. 15 (1973). *Mohney* v. *State,* 261 Ind. 56, 300 N. E. 2d 66 (1973); *Stroud* v. *State,* 261 Ind. 58, 300 N. E. 2d 100 (1973).

Thus the case fits precisely within the clearly settled *Younger* exception permitting federal courts to grant relief against state authorities who proceed under a statute "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." This exception, first fashioned in *Watson* v. *Buck,* 313 U. S. 387, 402 (1941), and reaffirmed in *Younger,* 401 U. S., at 53–54, was twice recognized in *Huffman* itself, 420 U. S., at 602, 611. Therefore the judgment of the District Court should be affirmed. The Court's remand to require the

---

[8] The statutory scheme also provides for "summary" trial and punishment for violation of an outstanding injunction or closing order, and for any contempt of court. Ind. Stat. Ann. § 9–2717 (Supp. 1974). In this context the District Court found the statutory scheme to be an attempt to circumvent the safeguards attendant upon formal criminal proceedings. 405 F. Supp., at 496.

[9] Ind. Stat. Ann. § 9–2711 (d) (Supp. 1974).

District Court to do over what it has done already makes no sense whatever. I respectfully dissent.[10]

---

[10] It is no answer that the Court said in *Huffman* that the Ohio nuisance statute there involved did not fit within the "flagrantly and patently violative of express constitutional prohibitions" exception to *Younger*, 420 U. S., at 611–612, and n. 23, since one Ohio state-court decision had narrowly construed the scope of the statute, *id.*, at 612 n. 23, and another had construed the Ohio definition of obscenity as comporting with the specificity requirements of *Miller* v. *California*, 420 U. S., at 596 n. 4. In sharp contrast, Indiana court decisions have not narrowed the scope of the Indiana nuisance statute and the Indiana Supreme Court, in the two decisions relied upon by the District Court, has held that the same definition of obscenity appearing in Indiana's criminal obscenity statutes does not satisfy the specificity standards of *Miller*.